[No. 7,770. Department One.—June 4, 1884.]

JOHN P. HYNES, A MINOR, BY HIS GUARDIAN AD LITEM, RESPONDENT, *v.* SAN FRANCISCO AND NORTH PACIFIC RAILROAD CO., APPELLANT.

RAILROAD CORPORATION—FAILURE TO ERECT FENCES—PERSONAL INJURY.—
A railroad corporation which fails to erect fences along its track, as required by section 485 of the Civil Code, is liable to a person on horseback who is injured by a passing train in consequence of the horse becoming frightened and unmanageable on the approach of the train and attempting to run across the track immediately in front of the engine, the rider not being guilty of contributory negligence.

ID.—PROVINCE OF THE COURT AND JURY—INSTRUCTIONS.—In view of the circumstances of the case as disclosed by the evidence, *held,* that the question of negligence on the part of the plaintiff should have been left to the jury to determine, and that the court erred in its instructions which practically took the question from the jury

APPEAL from a judgment of the Superior Court of Sonoma County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*E. S. Lippitt,* and *Barclay Henley,* for Appellant.

*E. L. Whipple,* for Respondent.

Ross, J.—John P. Hynes, a boy accustomed to work on his father's farm, through which the defendant's road is constructed, went on a certain afternoon in 1879 to his father's barn, mounted a horse, and started in search of cows. He used no saddle, but

according to his own and other testimony in his behalf, he had on the horse a halter and bridle. The barn was not far from the railroad track, and in going for the cows it was necessary for him to cross the track. Between the barn and the track was an old fence, in which was a bend and two gates — one a small and the other a large one. He entered the space next the railroad through the small gate, and, according to his own testimony, when inside the gate, heard the noise of the cars and train and saw them coming. "After I went through the little gate," said the witness, "I walked my horse down along the fence into the angle near the big gate, about seventy-five feet from the railroad track — a quick walk. Then he (the horse) got frightened and went to dash across the road, and was caught on the cow-catcher. I tried to hold him, but could not. He ran toward the little fence that goes toward the crossing, and jumped over it, and then on to the track — he was trying to cross the track ahead of the engine, and I fell on the cow-catcher in front and the horse was dragged along the track. I never rode him without a bridle. I thought I was safe in that corner. I was twenty-five feet from the big gate. I had worked the horse hauling hay and mowed with him in sight of the track — never ran before, or gave any trouble about the cars. We had him about two years. Did not know of the time the Sunday train commenced. Did not exactly know what hour the train would be down that day. I was hurt — had my left leg broken, and was sick about ten months before I could do anything." The horse was killed. Two actions have grown out of the occurrence. One on the part of John P. Hynes, by his guardian, to recover of the railroad company damages for the personal injuries sustained by him, and the other by James Hynes, the father of John and the owner of the horse, to recover of the railroad company for the loss of the horse, and for the loss of the services of his son, and for medical attendance, etc.

By a statute of this State the railroad company was required to make and maintain a good and sufficient fence along its track, and this duty the company in question failed to perform. The statute reads: "Railroad corporations must make and maintain a good and sufficient fence on either or both sides of their track and property. In case they do not make and maintain such

fence, if their engine or cars shall kill or maim any cattle or other domestic animals upon their line of road which passes through or along the property of the owner thereof, they must pay to the owner of such cattle or other domestic animals, a fair market price for the same, unless it occurred through the neglect or fault of the owner of the animal so killed or maimed. . . . ." (Civ. Code, § 485.)

It is obvious that the purpose of the statute in requiring railway companies to make and maintain such fences is to prevent collisions with cattle and other domestic animals, and that it has no application to ordinary cases in which an individual suffers any injury. The statute having imposed on the defendant the duty of making and maintaining the fences, and defendant having wholly failed in its duty in that particular, there can be no doubt, we think, of the liability of defendant for the loss of the horse, if there was no such negligence on the part of John P. Hynes in riding the horse, as and where he did, as precludes a recovery. (*C. & A. R. R. Co.* v. *Utley,* 38 Ill. 411; Whart. Law of Negligence, § 889, 2d. ed.)

In the Illinois case, the mare of the plaintiff was being driven at night, and becoming frightened, ran away, separated herself from the vehicle, and was found the next morning, not very far from the point where she took fright, dead on the track of the railroad. The real question presented by the evidence in the case was, whether the cattle-guard at the crossing, near which the mare was killed, and the fences along the line of the road, were good and sufficient—the court holding that if the fence or cattle-guard was not such as the law required at the point where the mare came upon the railroad, that fact alone would render the company liable. Precisely the same reason that made the company liable for the death of the mare, would have made it liable for the destruction of the vehicle had it remained attached to her and been destroyed, and also for the death or injury of its occupants. So, here, if John P. Hynes was without fault, and the defendant is liable for the loss of the horse by reason of its failure to make and maintain the fence required by the statute, no reason is perceived why it is not also liable for the injury to the boy carried on the back of the runaway horse. The real question, therefore, in our opinion, is whether there was such

contributory negligence on the part of the boy as precludes a recovery for the injury to him as well as for the loss of the horse. And that was a question peculiarly for the jury, under proper instructions from the court. It was not a case where the boy was so plainly guilty of contributory negligence as that the court would be justified in saying, as a matter of law, that he could not recover; nor, on the other hand, was the court justified in instructing the jury, as it did, that if the boy " was riding a horse which he had reason to believe and did believe to be gentle and not afraid of the cars, on the land of his father, when the horse became frightened by the cars and dashed upon the track and plaintiff was struck," they should find for the plaintiff; nor that if defendant had built and maintained the fence required by the statute, the collision would not have occurred.

There was also error on the part of the court in charging the jury that if the boy was on the premises of his father "at a point where a passing train could not injure him, upon a horse he was accustomed to ride, and believed to be gentle and not afraid of the cars, and if the horse became alarmed at the train and unmanageable and dashed upon the track with him, the same not being fenced, when it was beyond his power to prevent it or to dismount, then I charge you that in making up your verdict it does not matter whether he saw or heard the cars, or bell, or whistle, before the horse became frightened, or not." By these instructions the court virtually took from the jury the determination of the question of contributory negligence. · It was for the jury to say whether the boy exercised such ordinary care and prudence under the particular circumstances of the case as would reasonably be expected of him — regard, of course, being had to his age and condition. Judgment and order reversed and cause remanded for a new trial.

McKINSTRY, J., concurred.

McKEE, J., concurred in the judgment.